**AKERS v. HANSCOM.   (No. 10077.)***

(Court of Civil Appeals of Texas. Fort Worth.
Dec. 9, 1922.  Rehearing Denied
Feb. 3, 1923.)

1. Pleading ⬦205(2)—Special exception necessary to require plaintiff to allege whether contract sued on in writing.

In order to require of plaintiff an allegation as to whether a contract of assumption was in writing, a special exception is necessary, and, in the absence of such an allegation, could not be taken advantage of on general demurrer.

2. Appeal and error. ⬦173(6) — Statute of frauds not pleaded or raised, not considered.

When the statute of frauds is not pleaded to the oral modification of a contract, and no objection urged to evidence of the modification, the question will not be considered on appeal.

3. Frauds, statute of ⬦18(3)—Assumption by purchaser of obligation of vendors as part consideration for sale not within statute.

Where, as part consideration for a sale of real estate the purchaser assumed an obligation of vendors to another, Rev. St. art. 3965, subd. 2, requiring a promise to answer for the debt, default, or miscarriage of another to be in writing and signed by the person to be charged does not apply.

---

**4. Landlord and tenant ⬅═22(4) — Evidence held sufficient to sustain judgment for plaintiff in action for breach of lease by and rentals advanced to grantors of defendant.**

In an action for the breach of a contract for the lease of a hotel and for recovery of advance rental, paid to the grantors of defendant, evidence *held* sufficient to show that defendant assumed all of his grantor's obligations, recovering credit for the amount paid them as advance rental, as a part of the consideration thereof, and to sustain a judgment for plaintiff.

**5. Landlord and tenant ⬅═22(5)—$2,400 for breach of lease and rentals advanced held not erroneous.**

$2,400, for breach of a contract to lease a hotel and for rentals advanced, *held* not erroneous.

**6. Vendor and purchaser ⬅═275—Plaintiff, in action for breach of lease by, and rentals advanced to, defendant's grantors, held entitled to vendor's lien to enforce debt, where assumption by defendant of grantor's obligation shown.**

In an action for the breach of a contract to lease a hotel and for rental advanced to defendant's grantors, it appearing that as part of the consideration of the conveyance to him defendant assumed the obligation of his grantors to plaintiff, which was the basis of the judgment in plaintiff's favor, the plaintiff was entitled to subrogation to an implied vendor's lien on the property to satisfy her debt, and the trial court did not err in decreeing such a lien to secure the judgment rendered in her favor.

On Motion for Rehearing.

**7. Appeal and error ⬅═173(6)—Limitation of defense to particular subdivision of statute of frauds waiver of right to invoke other provisions for first time on appeal.**

The defense on the statute of frauds, whether made by objection to testimony or by special exception or by plea, may be limited to some particular subdivision of the statute, and, when so limited, there is a waiver of the right on appeal to invoke other provisions for the first time.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Suit by Emma Hanscom against C. D. Akers and others. From a judgment for plaintiff, named defendant appeals. Affirmed.

Mackey & Ritchey, of Breckenridge, for appellant.

Boynton, Caton & Sleeper, and D. T. Bowles, all of Breckenridge, for appellee.

DUNKLIN, J. Mrs. Emma Hanscom entered into a written contract with F. C. Riley and wife for a lease to her by them of a two-story hotel building which the Rileys had planned to construct in the town of Breckenridge. The date of the contract was September 2, 1920, and by its terms the Rileys agreed to finish the building and deliver possession thereof to Mrs. Hanscom on October 1, 1920. The lease term was for 2 years and 11 months, and the agreed rental was $1,200 a month, payable in advance, and Mrs. Hanscom agreed to deposit in bank $2,400 to cover the rentals to become due for the first and last months of the lease period. It was further stipulated in the contract that if the building was not completed and possession thereof delivered to Mrs. Hanscom on October 1, 1920, the deposit to be so made should be returned to her, but that if the building should be completed by that date, and if Mrs. Hanscom should refuse to accept it, then the $2,400 should be forfeited to the Rileys, but that if she should then accept the building the $2,400 should be taken down by the Rileys, and then credited upon the lease contract according to its terms. After the execution of that contract the Rileys were in need of money to complete the building, and proposed to Mrs. Hanscom that if she would pay to them $1,500 in cash they would relieve her from her contract to deposit the $2,400 in bank, and would give her credit on her rental contract for the 2 months' rental which would be covered by the $2,400 deposit. Mrs. Hanscom accepted that offer, and paid to the Rileys the $1,500. That agreement and transaction was oral. Thereafter, and on September 27, 1920, C. D. Akers entered into a contract with the Rileys for the purchase from them of the building, which was then unfinished, and of the lease of the grounds on which the building was being constructed. By the terms of that contract the Rileys agreed to sell and convey to Akers, and Akers agreed to purchase, the building and the lease on the land upon which the same was being constructed for a consideration of $12,500, as soon as the building was completed, payable as follows: $6,250 cash as soon as the building was ready for occupancy, and $500 each month thereafter, with interest at the rate of 8 per cent. per annum until such deferred payments, aggregating $6,250 should be paid. It was further stipulated that Akers should deposit in escrow in a bank as earnest money the sum of $1,000, to be forfeited to the Rileys in the event he should fail to pay the balance of the cash consideration.

It was further provided in that contract that the Rileys should obtain a good renter of the property for Akers at a price of $1,200 per month for a period of 2 years and 11 months fom October 1, 1920, provided, however, that no rentals should be paid until the building was completed, with the further provision that the renter to be so furnished should pay "the first and last payments in advance." Thereafter, and on October 1, 1920, the Rileys executed a conveyance of the building to Akers for a recit-

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ed consideration of $12,500, of which amount $6,250 was recited as "cash in hand paid," and $6,250 evidenced by 12 promissory notes, payable monthly, each for the sum of $500, with the exception of the note last maturing, which was for $750.

Mrs. Hanscom instituted this suit against the Rileys and C. D. Akers to recover damages for the breach by all the defendants of the rental contract which the Rileys had made with her, and the performance of which, it was alleged, Akers had assumed when he purchased the building from the Rileys. In her petition plaintiff specifically alleged her agreement with the Rileys to deposit $2,400 in escrow in the bank to cover the rentals for the first and last months of the rental period, her subsequent payment to the Rileys of $1,500 in cash in lieu of a performance of her agreement to deposit the $2,400 in escrow, and for which cash payment the Rileys had agreed to give her credit for rentals for the first and last months of the rental period. It was further alleged that thereafter Akers had purchased the property with full knowledge of her rental contract, and had agreed with the Rileys as a part of the consideration for the conveyance of the property to him to assume the Rileys' obligation to plaintiff growing out of the rental contract they had made with the plaintiff and the subsequent modification thereof by the said payment of $1,500. It was further alleged that the $2,400 which she had agreed to deposit in bank was deducted from the cash consideration of $6,250 which Akers had agreed to pay Riley for the property, leaving the amount of the cash so paid by Akers as $3,850, instead of $6,250, the cash consideration recited in the deed.

It was further alleged that the building was never completed nor possession delivered according to contract, and that by reason thereof she had sustained damages in the sum of $7,400, $5,000 of which represented the loss of profits from business which she would have transacted had the building been delivered to her, and certain traveling expenses in going to and from the town of Breckenridge from her home in Eastland in an effort to induce the defendants to comply with their contract; and $2,400, representing the value of the rents for 2 months, which she had secured by the payment to the Rileys of $1,500 in cash. It was further alleged that she was entitled to an equitable lien upon the property for the amount claimed by her, and especially for the $1,500 advanced to the Rileys, which was actually used in the construction of the building.

Defendant Akers, in addition to a general denial, specially pleaded that he bought the property from the Rileys without notice of the fact that plaintiff had paid to them the $1,500 alleged in lieu of the deposit of $2,400, which she had contracted to make.

He further alleged that at the time he purchased the property the Rileys represented that the building had been practically completed, and that there were no outstanding liens for material or labor thereon; that he relied upon said representations, and was induced thereby to purchase, but that later he discovered several outstanding liens against the property for material and labor which he was compelled to pay, and did pay, and that he had expended in the aggregate a total of $7,649.90 in the discharge of said liens and in the completion of the building. By reason of that fact he prayed for a judgment canceling the outstanding notes which he had executed to the Rileys, aggregating the sum of $6,250. He further alleged that plaintiff should not be granted a recovery in any sum, since he knew nothing of her contract with the Rileys, by virtue of which she, for a consideration of $1,500 paid, had been relieved by the Rileys from her obligation to deposit the $2,400 in bank. And by reason of that arrangement she had made it possible for the Rileys to cheat and defraud her by appropriating that sum to their own use, and at the same time breach their contract with her to finish the building and deliver possession thereof to her in accordance with their contract so to do, and that for the loss so sustained by her she, and not defendant Akers, should suffer. Defendant Akers further pleaded, in effect, that he was in equity subrogated to the rights of the lienholders whose liens he had so discharged, and that the same were superior to any of the rights of the plaintiff.

The Rileys had left the country and the court appointed an attorney to represent them, they having been cited by publication. The attorney so appointed filed a general demurrer and general denial.

Judgment was rendered in favor of the plaintiff against defendant Akers for $2,400, and the court decreed a lien upon the property to secure her in the payment of the same. Judgment was also rendered in favor of defendant Akers against the Rileys, canceling the outstanding notes, aggregating $6,250 which he had executed to them. From that judgment the defendant Akers has appealed.

The record shows that the $1,500 paid by plaintiff to the Rileys was paid on September 15, 1920. Appellant insists that the allegations in plaintiff's petition were insufficient as against a general demurrer to show that he assumed the obligations of the Rileys to the plaintiff, because it fails to allege any fact which would constitute an express or implied assumption of those obligations. There is no merit in that contention. The petition contains the specific allegation that—

"As part of the purchase price of said property, defendant Akers agreed and bound and

249 S.W.—21

obligated himself to carry out and perform the lease contract of defendants Riley with plaintiff as hereinbefore set out, and assumed all of said Rileys' obligations to plaintiff arising thereunder, it being specifically understood and agreed by said defendant Akers that plaintiff had a credit on said lease contract of 2 months' rental, or $2,400, on account of her advancement of $1,500 to defendants Riley as aforesaid; and that the cash consideration of $6,250 recited in the deed from said Rileys to Akers includes said sum of $2,400 which defendant Akers agreed to account to plaintiff for specifically in assuming defendants Riley's obligation under said lease contract; Akers actually paying in cash to Rileys as consideration for said conveyance the sum of $3,850 and his assumption of Rileys' obligation to account to plaintiff for 2 months' rental advanced being accepted and recited as cash consideration in said deed."

[1] In order to require of plaintiff an allegation as to whether or not the contract of assumption was in writing, a special exception was necessary, and the absence of such an allegation could not be taken advantage of by a general demurrer.

By different assignments, appellant contends that, as there was no ambiguity in the lease contract between the plaintiff and the Rileys, and since such a contract was required by law to be in writing, the subsequent modification of it by parol agreement between those parties could not be proven, especially as against appellant Akers, who was not present at the time and knew nothing of it until after it was so modified, and never thereafter gave his assent thereto; and especially since by said modification of the written contract appellant was deprived of the deposit of the $2,400 which plaintiff had agreed to make.

[2] In the argument contained in appellant's brief, it is insisted that, since the contract for the lease made by Mrs. Hanscom with the Rileys came within the purview of article 3965, Rev. Statutes, commonly termed the statute of frauds, and by such statute was required to be in writing, any subsequent modification of it by agreement between the parties was also required to be in writing, under the decisions in Beard v. Gooch, 62 Tex. Civ. App. 69, 130 S. W. 1022; Burgher v. Canter (Tex. Civ. App.) 190 S. W. 1147; Tom v. Roberson (Tex. Civ. App.) 182 S. W. 698; Smith v. Nesbitt (Tex. Civ. App.) 235 S. W. 1105.

A sufficient answer to that contention is that subdivision 4 of article 3965, which is the paragraph of the article relied on, and which requires any contract for the sale of real estate or lease thereof for a longer term than 1 year to be in writing, was not pleaded by appellant as a defense to plaintiff's suit, nor has he pointed out any objection urged to the proof of the oral modification of the original contract, based upon that subdivision of the statute.

A special exception was addressed to plaintiff's petition, in which subdivision 2 of article 3965 was invoked. That subdivision reads, "to charge any person upon a promise to answer for the debt, default or miscarriage of another." But we find no special exception to plaintiff's pleading invoking the fourth subdivision of that article. League v. Davis, 53 Tex. 9; Texas Brewing Co. v. Walters (Tex. Civ. App.) 43 S. W. 548; International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93; Hendrix v. Brazzell (Tex. Civ. App.) 157 S. W. 280; Booher v. Anderson (Tex. Civ. App.) 86 S. W. 956; Wallis v. Turner (Tex. Civ. App.) 95 S. W. 61.

[3] If appellant, as part of the consideration for the sale of the property to him by the Rileys, assumed the obligation of the Rileys to the plaintiff, then subdivision 2 of article 3965 was not applicable. Morris v. Gaines, 82 Tex. 255, 17 S. W. 538; Spann v. Cochran, 63 Tex. 240.

Plaintiff testified that after appellant bought the building from the Rileys she had a conversation with him, in which he informed her that at the time he bought the building he knew of the Riley contract with her, and also of the stipulation, therein contained, binding her to deposit $2,400 for 2 months' rent on the building, and that he bought the building on the strength of that contract. She further testified as follows:

"I asked him if Mr. Riley told him, instead of the money being in the bank, he had used it, and he said yes, but he was getting credit for the $2,400 in the deal, and I would be protected just the same as if I was dealing with Mr. Riley. * * * Mr. Akers told me he had received credit for the $2,400 in the purchase of the building from Mr. Riley, and that I had paid Mr. Riley. At the time I told him I had paid Riley only $1,500 and told him why and he understood it. Mr. Akers told me he had assumed the contracts and obligations of Mr. Riley with reference to that building, not only that time, but the next time I talked with him. I had another conversation with him a few days after that when I came up to see if I could have the building, but it was not ready yet. I asked Mr. Akers if he realized every day I was kept out of the building meant $40 to $45 a day profit, the way business was then. He said, 'It is unfortunate, but you will be taken care of in all ways.' In that conversation Mr. Akers agreed that I should have 2 months' free rental of the building, and that I would go on ahead just as Mr. Riley had agreed. He said he would carry out the agreement that Mr. Riley had made, and that Mr. Riley had mentioned the matter to him when the deal was made. * * * The check for $1,500 I gave Mr. Riley was in advance for rent, to cover the $2,400 I was to pay as stipulated in the contract, and in place of the $2,400 that was to be placed in escrow in the bank. * * * Mr. Akers never gave me any written instrument, notifying me that he was assuming the original lease between Mr. Riley and I. We just talked

it over. He told me he bought the building on the strength of my contract, and would finish it as quickly as possible, and I could have possession."

Appellant Akers testified in part as follows:

"In the deal with Mr. Riley he was to furnish me a renter at $1,200 a month for the entire period of the lease, which was 2 years and 11 months. He did not tell me who the renter would be, but said he had made a contract, and the money was up in escrow for 2 months. It was in our contract he was to furnish the renter. * * * I told Mrs. Hanscom that if she would go ahead and carry out the contract I would finish the building as quickly as possible, and let her have it. That conversation was along the first part of October, possibly the 7th, 8th, 9th, or 10th, somewhere along there, after Riley left. I was trying to get the claims together, and she came up to see me. That was after she had told me about the payment of the $1,500, and that she was entitled to 2 months' rent by the payment of that $1,500. I told her if she went ahead with the contract I would let her have the building. I meant the original contract with Riley, and that she would get credit for $2,400 for the $1,500 paid Riley. *. * * I paid Mr. Riley $2,800 cash on the building. Of the balance $1,000 was put in escrow that he was to get when the building was completed, and he was to give me credit for the $2,400 the tenant had in escrow. I claim ownership of the building now, and am in possession of it. I did not pay Mr. Riley the $2,400 represented by the amount to be put in escrow. I paid him only $2,800; that is all the money I paid him. The cash consideration for the deed was something like $6,250, and included the $2,800 I paid him, and the $1,000 in the bank and the $2,400 I was to get credit for on the Hanscom contract. * * * Mr. Riley told me he had a contract to rent the building, and the money was in escrow, and he felt sure it was good. He did not tell me who he had rented it to. I was under notice that somebody claimed under a rental contract from him."

On redirect examination by counsel for appellant, the following question was propounded to him, with his answer thereto:

"Now as a matter of fact, instead of the $2,400 being paid to you and then you paying it across to Riley, it was just paid by Mrs. Hanscom to Riley? A. That is the way it was going to be done."

Appellant further testified that he bought the property upon the assurance of Riley that there were no outstanding unpaid claims or liens against the property, and that the building was practically finished, but that he found said statements to be untrue, and that he had paid out approximately $7,000 to liquidate outstanding claims for labor and material, and for further work to finish the building. The statement of facts also shows an agreement made between all the parties to the suit upon the trial of the cause that $1,000, which appellant had deposited in escrow as a part of the consideration to be received by Riley upon the final consummation of the sale to appellant, was never received by Riley, but that $625 of it should be paid to the broker for negotiating the sale to appellant, and that the balance, $375, is still on deposit with the First National Bank of Breckenridge. Under the facts it cannot be doubted that appellant has the right to take down that balance. It thus appears from the uncontroverted proof that appellant has paid out for the property the sum of $10,425, which is $2,075 less than the amount he contracted to pay the Rileys for it; the amount so paid consisting of the following items: $2,800 cash, $7,000 for construction, and $625 to the broker. As recited already, by the judgment rendered all of appellant's outstanding promissory notes executed by him for the property have been canceled, and there is no evidence in the record indicating any probability that he will ever be required to pay said notes to any one.

[4] The testimony referred to above was sufficient to support a finding that appellant assumed all of Riley's obligations to the plaintiff; it also conclusively shows that he received credit for $2,400 on the purchase price of the property when he bought it from the Rileys, by reason of the lease contract between the Rileys and Mrs. Hanscom, and we believe that under such circumstances appellant became liable to Mrs. Hanscom to the same extent as were the Rileys before appellant purchased the property from them.

[5] The next question to be considered is that of the proper measure of plaintiff's damages. In plaintiff's petition, $2,400 was alleged to be the value of the 2 months' rent, which she lost by her failure to receive the building in accordance with her contract with the Rileys. If that was the value of the rentals, we think it cannot be doubted that such would be the measure of her damages. We are of the opinion further that the purchase of the building by appellant, and receiving credit upon the cash purchase price of $2,400 by reason of that rental contract, was competent evidence of value, and tended to prove that the rental for the 2 months was worth that sum, because it was in the nature of an admission against interest by a party to a suit, and especially so, in the absence of any testimony of a contrary effect. Cent. Branch, etc., Ry. v. Andrews, 37 Kan. 641. 16 Pac. 338; Springfield v. Schmook, 68 Mo. 394; East Brandywine & W. Ry. v. Ranck, 78 Pa. 454; 1 Jones, Blue Book on Evidence, p. 859; 16 Cyc. p. 1141. Hence we are of the opinion that there was no error in awarding plaintiff the sum of $2,400 as the measure of her damages.

[6] Since appellant, as a part of the consideration of the conveyance of the property

to him, assumed the obligation of the Rileys to plaintiff, which was the basis of the judgment in her favor, plaintiff was entitled to subrogation, to an implied vendor's lien on the property in controversy to satisfy her debt; and the trial court did not err in decreeing such a lien to secure the judgment rendered in her favor.

For the reasons indicated, all appellant's assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

In our original consideration of this case, we overlooked the following allegations, which were contained in the defendant's answer:

"That plaintiff's damages, if any, are due to the default and miscarriage of said Rileys in not completing said building as they had contracted to do, and any attempt to hold this defendant responsible for such damage is in contravention of the statute of frauds, which said statute this defendant here and now invokes as a complete defense against the plaintiff's damages as to him."

Article 3965, Rev. Statutes, which is commonly termed the statute of frauds, reads as follows:

"No action shall be brought in any of the courts in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized:

"1. To charge any executor or administrator upon any promise to answer any debt or damages due from his testator or intestate, out of his own estate; or,

"2. To charge any person upon a promise to answer for the debt, default or miscarriage of another; or,

"3. To charge any person upon any agreement made upon consideration of marriage; or

"4. Upon any contract for the sale of real estate or the lease thereof for a longer term than one year," etc.

We think it clear that the pleading just quoted invokes subdivision 2 of that statute, and it does not invoke subdivision 4 of the statute, as was insisted upon original hearing, and which contention is stressed in motion for rehearing, nor was there any special exception invoking the fourth subdivision. Furthermore, appellant's only assignment of error which presents the defense of the statute of frauds is assignment No. 4, which reads as follows:

"The court erred in overruling this defendant's special exception No. 4 to the allegations in plaintiff's first amended original petition, for the reasons stated in said exception, which exception is as follows:

'This defendant further specially excepts to the plaintiff's pleading in so far as it affects the said C. D. Akers, for the reason that it is an attempt to hold for the debt, default, or miscarriage of another, to wit, Dee Inez Riley and F. C. Riley, when there is no promise or agreement or memorandum thereof in writing, signed by the said C. D. Akers, or by any person for him thereunto lawfully authorized, pleaded by the plaintiff.'"

[7] That exception, as did the plea quoted, invokes subdivision 2 of the statute of frauds, and not subdivision 4, and no assignment is presented to the action of the court in overruling any plea or exception based on subdivision 4 of the statute. Even though subdivision 4 of the statute had been invoked by a special exception or by a plea, appellant would be in no position to invoke that defense upon appeal, in the absence of some assignment presenting error to the action of the court in overruling that defense. It has been held that advantage may be taken of the statute of frauds under a plea of general denial, by objection made to the proof offered by plaintiff to sustain his cause of action, if the statute of frauds is made the basis of the objection; although decisions to the contrary are shown in note in Ann. Cas. 1912D, p. 46, but it has also been decided that the defense on the statute of frauds, whether made by objection to testimony or by special exception or by plea, may be limited to some particular subdivision of the statute; and when such defense is so limited, there is a waiver of the right on appeal, for the first time, to invoke other provisions. Johnson v. Tindall (Tex. Civ. App.) 161 S. W. 401; International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93; League v. Davis, 53 Tex. 9.

Appellant urgently insists that we were in error in holding that he has not, in his brief, pointed out any objection to the plaintiff's proof of the oral modification of the original contract between plaintiff and the Rileys, based upon subdivision 4 of the statute of frauds, and, in support of that contention, he refers to an assignment in his brief based upon a bill of exception taken to the admission of the testimony of Mrs. Hanscom, the plaintiff, to the effect that after the Rileys had entered into the written contract of lease of the hotel property with her she had an oral agreement with them, by the terms of which they consented to accept $1,500 cash, which was paid, in full satisfaction of her obligation to deposit $2,400 as earnest money to cover rents for the first and last months of the rental period. The objection urged to the admission of the testimony, as set out in the bill of exception referred to, reads as follows:

"To which counsel for defendant, Akers, objected, stating as grounds that whatever verbal contract they made or might have had was an attempt to alter or change the terms of a written contract by verbal contract without showing fraud, accident or mistake."

And following the admission of testimony after the foregoing objection was made, the bill contains the following recital:

"To which the defendant Akers again objected as follows: 'We except further to any verbal contract in so far as it affects the defendant Akers, unless it is shown he was present or had notice of same.'"

And following the admission of further testimony of the witness to the same effect, the bill of exception contains this further recital:

"Whereupon the defendant Akers again insisted upon his objection to this evidence, which was overruled by the court, and the witness permitted to testify as follows."

The objection so urged to the admission of the testimony did not escape our attention upon original hearing, as appellant insists must have been true. But we reached the conclusion then, and adhere to it now, that the objection so urged was not sufficient to invoke any provision of the statute of frauds, but only invoked a general rule of evidence forbidding the introduction of parol proof of contemporaneous agreements not in writing, the effect of which would be to alter or change the written terms of the contract, in the absence of a plea of fraud, accident, or mistake. In further support of our conclusion that the oral agreement of appellant to assume Riley's obligation to Mrs. Hanscom, in part consideration for the conveyance of the property to him by Riley was not subject to the provision of subdivision 2 of the statute of frauds, see 20 Cyc. p. 1074, and authorities there cited. In his motion for rehearing, appellant says:

"The record is absolutely silent as to any promise to pay the obligation; it is also silent as to any fact which would indicate any knowledge of the parol change in the written contract which appellant was purchasing."

The testimony of Mrs. Hanscom, set out in our original opinion, we think refutes the correctness of that contention, and the trial judge was the exclusive judge of the credibility of the witnesses.

The motion for rehearing is accordingly overruled.